**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ACCOUNTING PRINCIPALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No. 07-CV-636-TCK-PJC** |
| | ) |
| MANPOWER, INC., and | ) |
| INTERNATIONAL BUSINESS MACHINES | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Disqualify Counsel (Doc. 20).  For reasons set forth

herein, the motion is granted, and the law firm of Crowe and Dunlevy ("Crowe & Dunlevy") is

disqualified from serving as counsel for Defendant Manpower, Inc. ("Manpower").

**I.      Factual Background**

Plaintiff Accounting Principals, Inc. ("API") is a staffing company specializing in contract,

contract to hire, and direct hire of accounting and finance professionals in the Tulsa employment

market.  On May 1, 2003, API and Defendant International Business Machines, Inc. ("IBM")

entered into an agreement ("Base Agreement") under which API agreed to provide contract

employees to fill finance and accounting positions at IBM's Tulsa office.

A.      <u>2005 Lawsuit - Crowe & Dunlevy Represents API</u>

On March 31, 2005, API filed suit against one of its staffing competitors, AcctKnowledge,

and its owner, John Favell ("2005 Lawsuit").  API alleged that AcctKnowledge and Favell (1)

tortiously interfered with contractual relationships between API and two of its employees by hiring

them in violation of non-compete clauses in those employees' contracts; (2) interfered with API's

business relations with several of its employees by "tempnapping" them; and (3) interfered with API's business relations with IBM by "tempnapping" API's employees. (*See* 3/31/05 Petition, Ex. A to Mot. to Disqualify.)  "Tempnapping" was a term used by API in the 2005 Lawsuit to describe AcctKnowledge's alleged conduct of wrongfully soliciting and stealing API's employees working at IBM.  Attorneys Craig Hoster ("Hoster") and Michael Pacewicz ("Pacewicz"), both of Crowe & Dunlevy, represented API in the 2005 Lawsuit.

During this same time frame, API pursued a complaint against IBM in an internal ombudsman program at IBM ("Ombudsman Proceeding").  The Ombudsman Proceeding was related to IBM's involvement in AcctKnowledge's alleged improper conversion of API's employees. Although Crowe & Dunlevy did not formally represent API during the Ombudsman Proceeding, API alleges that API employees "confided in the Crowe & Dunlevy attorneys regarding this dispute and sought and received their legal advice."  (Aff. of Kimberly Nation, Ex. A to Reply to Mot. to Disqualify, at ¶ 6.)  The IBM ombudsman ruled in favor of API.  Subsequently, the 2005 Lawsuit was settled, and the case was dismissed with prejudice by stipulation of the parties on January 20, 2006.

### B.    Current Lawsuit - Crowe & Dunlevy Represents Manpower

On November 1, 2007, API filed the pending suit against another of its staffing competitors, Manpower, and against IBM.[1]  In this case, API seeks injunctive relief (1) forcing Manpower to refrain from communicating with API employees; (2)  forcing IBM to refrain from communicating with API employees regarding agreements between IBM and API; (3) forcing IBM to perform its

---

[1]  The case was filed in the District Court for Tulsa County, Oklahoma and was removed to this Court on November 6, 2007.

obligations under the Base Agreement; and (4) forcing IBM to cease coordination with and/or provision of assistance to Manpower in its efforts to contract or communicate with API employees. API also asserts three other causes of action:  (1) a claim against IBM for breach of the Base Agreement; (2) a claim against Manpower for tortious interference with API's contractual relations with IBM; and (3) a claim against IBM and Manpower for tortious interference with prospective business relations between API and its employees.  (*See* 11/1/07 Verified Petition, Ex. E to Mot. to Disqualify.)  API is represented by Tony Haynie and Jed Isbell, of the law firm of Conner & Winters.  Manpower is represented by James L. Kincaid ("Kincaid") and Randall J. Snapp ("Snapp"), of Crowe & Dunlevy.

API has moved to disqualify all attorneys at the law firm of Crowe & Dunlevy from representing Manpower based on Crowe & Dunlevy's prior representation of API in the 2005 Lawsuit.  API contends that Crowe & Dunlevy has a conflict of interest, as defined in Oklahoma Rules of Professional Conduct 1.9(a) ("ORPC 1.9(a)") and 1.10(a) ("ORPC 1.10(a)").  Specifically, API contends that Hoster and Pacewicz have a conflict of interest pursuant to ORPC 1.9(a) and that such conflict is imputed to the Crowe & Dunlevy firm, including Kincaid and Snapp, pursuant to ORPC 1.10(a).[2]

---

[2] Neither Hoster or Pacewicz have entered an appearance on behalf of Manpower before this Court.  However, Pacewicz appeared with Kincaid at the hearing held in state court on API's motion for temporary restraining order.  For purposes of this Order, the Court assumes that only Kincaid and Snapp seek to serve as named counsel for Manpower in this action.

**II.      General Standard Governing Motions to Disqualify**

Control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge and is a matter of judicial discretion. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994). In exercising its discretion and determining whether to grant a motion to disqualify, federal courts must look to "two sources of authority." *Id.* "First, attorneys are bound by the local rules of the [federal] court in which they appear." *Id.* As noted by the Tenth Circuit, "[f]ederal district courts usually adopt the Rules of Professional Conduct of the states where they are situated." *Id.* The Northern District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct ("ORPC") as the standard governing attorney conduct. *See* N.D. Okla. LCvR 83.6(b). Therefore, one source of law that the Court must consult is the Oklahoma Rules of Professional Conduct.

"Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided *by applying standards developed under federal law.*" *Cole*, 43 F.3d at 1383 (emphasis added); *see also United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005) (same). Under Tenth Circuit law, "motions to disqualify are governed by the ethical rules announced *by the national profession* and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (quotation omitted) (emphasis added). Thus, although federal courts must consult state rules of professional conduct, they are not bound by state-court interpretations of such rules. *See Weeks v. Indep. Sch. Dist. No. I-89 of Okla. County.*, 230 F.3d 1201, 1214 (10th Cir. 2000) (Briscoe, J., concurring) (explaining that neither district court nor Tenth Circuit was bound by Oklahoma Supreme Court's interpretation of ORPC 4.2 because "ethical rules in federal court are subject to a national standard"). Nonetheless, Judge Briscoe advised that "it would arguably create procedural difficulties for practitioners in Oklahoma were we

4

to adopt an interpretation of Rule 4.2 different from that adopted by the Oklahoma Supreme Court."

*Id.* Based on these pronouncements, the Court's task is to "apply[] standards developed under

federal law," *Cole*, 43 F.3d at 1383, while attempting to avoid any inconsistencies with state law that

would "create procedural difficulties for practitioners in Oklahoma," *see Weeks*, 230 F.3d at 1214.

### III.    Standard Governing Motions to Disqualify Based on ORPC 1.9(a)

A.    ORPC 1.9(a) and 1.10(a)

API asserts that disqualification is warranted based on the conflict of interest rule governing

duties to former clients set forth at ORPC 1.9(a):

Rule 1.9.  Conflict of Interest:  Duties to Former Clients

(a) A lawyer who has formerly represented a client in a matter shall not thereafter
represent another person in the same or a substantially related matter in which that
person's interests are materially adverse to the interests of the former client unless
the former client gives informed consent, confirmed in writing.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9.[3]  API further contends that the conflict of interest is

imputed to the entire Crowe & Dunlevy firm pursuant to ORPC 1.10(a):

Rule 1.10.  Imputation of Conflicts of Interest:  General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent
a client when any one of them practicing alone would be prohibited from doing so
by Rules 1.6 or 1.9, unless the prohibition is based on a personal interest of the
prohibited lawyer and does not represent a significant risk of materially limiting the
representation of the client by the remaining lawyers in the firm.

*Id.* at Ch. 1, App. 3-A, Rule 1.10.  It is not disputed that, if Hoster and Pacewicz have a conflict of

interest pursuant to ORPC 1.9(a) based on their prior representation of API, such conflict may be

---

[3] ORPC 1.9(a) is identical to the ABA Model Rule of Professional Conduct.  *See* ABA
Model Rule of Prof'l Conduct 1.9.  Thus, the Oklahoma rule reflects the national standard.

imputed to the entire firm of Crowe & Dunlevy pursuant to ORPC 1.10(a).[4]  The dispute is whether

API has met its burden of proving that the 2005 Lawsuit and the present case are substantially

related, and that disqualification is warranted in light of the public interest and the litigants' rights.

      B.     <u>Tenth Circuit Standard</u>

      Pursuant to Tenth Circuit law, a party seeking to disqualify opposing counsel pursuant to

ORPC 1.9(a) must establish that "'(1) an actual attorney-client relationship existed between the

moving party and the opposing counsel; (2) the present litigation involves a matter that is

'substantially related' to the subject of the movant's prior representation; and (3) the interests of the

opposing counsel's present client are materially adverse to the movant.'"  *Stiger*, 43 F.3d at 1383

(quoting *Cole*, 43 F.3d at 1383).  If the movant establishes the first two prongs, "an irrebuttable

'presumption arises that a client has indeed revealed facts to the attorney that require his

disqualification.'"  *Id.* (quoting *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985)).  This

irrebuttable presumption under Tenth Circuit law is consistent with the Comment to the most recent

version of ORPC 1.9, which took effect January 1, 2008:

> A former client is not required to reveal the confidential information learned by the
> lawyer in order to establish a substantial risk that the lawyer has confidential
> information to use in the subsequent matter. A conclusion about the possession of
> such information may be based on the nature of the services the lawyer provided the
> former client and information that would in ordinary practice be learned by a lawyer
> providing such services.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt.  Thus, API need not come forward with evidence

of the actual confidential information that was revealed to Hoster and Pacewicz during the 2005

---

[4]  As explained in the Comment to ORPC 1.10, "a firm of lawyers is essentially one lawyer
for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is
vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is
associated." *Id.* at Ch. 1, App. 3-A, Rule 1.10.

Lawsuit.  Instead, the Court may conclude that these attorneys have confidential information to use in this matter if API demonstrates that (1) an actual attorney-client relationship existed; and (2) this case involves a matter that is substantially related to the 2005 Lawsuit.[5]

      C.      Oklahoma Supreme Court's Decision in *Arkansas Valley State Bank  v. Phillips*

Although Manpower concedes that federal standards govern the motion to disqualify, Manpower seems to argue that API is not entitled to the irrebuttable presumption under Tenth Circuit law.  Relying on the Oklahoma Supreme Court case of *Arkansas Valley State Bank  v. Phillips,* 171 P.3d 899 (Okla. 2007), Manpower criticizes API's reliance "upon presumptions that have been implicitly rejected by the Oklahoma Supreme Court" and API's failure to "identify 'specific fact[s] . . . that [Crowe & Dunlevy attorneys] had knowledge of material and confidential information."  (*Id.* 10 (quoting *Phillips*).)  Although it is not bound by Oklahoma law interpreting the professional rules, the Court does have an obligation to consider relevant Oklahoma Supreme Court decisions and, if possible, avoid inconsistencies that would "create procedural difficulties for practitioners in Oklahoma."  *See Weeks*, 230 F.3d at 1214.  Accordingly, the Court will address the *Phillips* decision and its impact on the instant case.

In *Phillips*, a bank filed a breach of contract suit against a securities firm and an individual employed by both the bank and the securities firm.  The individual and the securities firm were represented by attorney Bill Wilkinson ("Wilkinson").  During discovery, Wilkinson conducted

---

[5] The irrebuttable presumption does not apply in cases in which the lawyer who formerly represented the moving party has changed law firms, and the moving party seeks to disqualify the attorney's new firm pursuant to ORPC 1.10(b) or a similar rule.  *See SLC Ltd. V v. Bradford Group West, Inc.*, 99 F.2d 464, 468 (10th Cir. 1993) (explaining that the attorney's new law firm is "disqualified only when the attorney involved had actual knowledge of protected material information protected").  In this case, the attorneys who allegedly possess confidential information, Hoster and Pacewicz, remain employed at Crowe & Dunlevy.

depositions of several bank employees.  Following his deposition, one bank employee was terminated.  The terminated employee retained Wilkinson to represent him in a wrongful termination suit against the bank.  The bank moved to disqualify Wilkinson as counsel in the contract dispute based on Wilkinson's representation of the terminated employee in the wrongful termination suit, arguing that Wilkinson had received confidential information from the terminated employee that was material to the contract dispute.  The bank relied on ORPC 4.2, which prohibits communication with a represented party, and ORPC 1.6, which prohibits a lawyer from revealing information relating to representation of a client, as the specific grounds for disqualification of Wilkinson.  The district court rejected the bank's argument based on ORPC 4.2 because the terminated employee did not have the authority to speak for or bind the bank.  *Id.* at 905.  However, the district court accepted the bank's argument based on ORPC 1.6 and granted the motion to disqualify, finding that there was "beyond a nagging suspicion" that the terminated employee had disclosed confidential information to Wilkinson.  *Id.* at 902, 906.[6]  The district court did so despite the terminated employee's testimony that he never disclosed confidential information to Wilkinson.  *Id.* at 906 n.35.

On appeal, the "central point of contention" was the proper test to apply when faced with a motion to disqualify counsel.  *Id.* at 903.  The bank argued that an "appearance of impropriety test" should be employed, with doubts resolved in favor of disqualification.  *Id.*  Wilkinson argued that the appearance of impropriety test had been abrogated and that a movant should bear a heavy burden to disqualify counsel.  The court rejected use of the appearance of impropriety test, held that "[d]isqualification is such a drastic measure that it should be invoked if, and only if, the court is

---

[6] The bank argued, and the district court apparently agreed, that ORPC 1.6 imposes a "duty on attorneys not only to refrain from disclosing confidential information, but also a correlative duty to refrain from inducing others to disclose confidential information."  *Id.* at 906.

8

satisfied that real harm is likely to result," and reversed the disqualification order. *Id.* at 905. According to the Oklahoma Supreme Court, the trial court erred by failing to make findings that Wilkinson had knowledge of the bank's material and confidential information and by resolving doubts in favor of disqualification. *Id.* The court concluded by stating:

> A party litigant's right to employ the counsel of his or her choice is fundamental. A disqualification order is a drastic measure. The standard for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. *If a trial court grants a motion to disqualify counsel based on conflict of interest or improper possession of confidential information, it must hold an evidentiary hearing and make a specific factual finding that the attorney had knowledge of material and confidential information.*

*Id.* at 911 (emphasis added).

To the extent Manpower relies on *Phillips* in an attempt to avoid the irrebuttable presumption that arises under federal law, the Court rejects such reliance. First, *Phillips* is not binding on this Court, and the Court will not apply *Phillips* in a manner that is inconsistent with the relevant three-part test set forth in Tenth Circuit precedent. Second, any interpretation of *Phillips* that would require a moving party to present evidence of the precise confidential information that was obtained during the prior representation is inconsistent with the new Comment to ORPC 1.9(a), which took effect approximately two months following the *Phillips* decision. *See In re Application of the Okla. Bar Ass'n to Amend the Okla. Rules of Prof'l Conduct*, 171 P.3d 780 (Okla. 2007) (showing differences between former Comment to ORPC 1.9 and new Comment to ORPC 1.9). The new Comment provides that the "former client *is not required to reveal the confidential information learned by the lawyer* in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt.

(emphasis added).  Thus, ORPC 1.9(a) actually supports application of the irrebuttable presumption and is consistent with federal law.

Third, the facts of *Phillips* are distinguishable from those presented, and the court in *Phillips* did not expressly address an alleged violation of ORPC 1.9(a).  In *Phillips*, Wilkinson did not accept representation that was substantially related to a matter involving one of his own former clients. Wilkinson accepted representation of an individual that had recently been fired by an opposing party in the present litigation, and the terminated party expressly testified that he had not revealed any confidential information to Wilkinson.  Although the Oklahoma Supreme Court stated that "[t]he common thread running through each of the Bank's arguments is that the attorney was improperly in possession of confidential information about the Bank's suit" and therefore extended its holding to all cases involving a "conflict of interest," the Court never directly addressed ORPC 1.9(a) or the issue of a "substantially related" matter involving a former client.

Finally, even assuming the standard set forth in *Phillips* remains applicable to ORPC 1.9(a) and was intended to govern violations of ORPC 1.9(a), it is not entirely clear that API must actually reveal the confidential information in order to comply with the *Phillips* standard.  The standard in *Phillips* is "whether real harm to the integrity of the judicial system is likely to result if counsel is not disqualified."  *Id.* at 911.  The more specific required finding is that the disqualified attorney "had knowledge of material and confidential information."  *Id.*  In a case involving Rule 1.9(a), a court could potentially make a finding, based purely on the substantial relatedness of the two matters, that an attorney had knowledge of material and confidential information without knowing precisely what that information is.  A court could certainly make a finding, based purely on the relatedness of the two matters, that "real harm" to the integrity of the judicial system is likely to

result if the attorney is not disqualified.  Therefore, even in applying the federal standard and the irrebuttable presumption, this Court will not necessarily run afoul of Oklahoma law.  *Cf. Prospective Investment and Trading Co., Ltd. v. GBK Corp.*, 60 P.3d 520, 525-26 (Okla. Civ. App. 2002) (specifically addressing ORPC 1.9(a) and 1.10(a)) (explaining that the trial court could properly "infer[] from the circumstances" whether a law firm was provided with confidential information "to such extent that it ha[d] knowledge of confidential information" and that district court was not required to "conduct an inquiry and identify the confidential information with specificity . . . [because] the confidential nature of the information would be compromised").

## IV.   Analysis of Whether 2005 Lawsuit and Present Case Are Substantially Related

The first prong, the existence of a former attorney-client relationship between Crowe & Dunlevy and API, is not disputed.  The dispute is whether API can satisfy the second prong, which requires a showing that "the present litigation involves a matter that is 'substantially related' to the subject of [API's] prior representation" by Crowe & Dunlevy.  *Stiger*, 43 F.3d at 1383.  The Comment to ORPC 1.9(a), which is identical to that contained in the model rule, provides significant guidance in determining when two "matters" are "substantially related":

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute *or if there otherwise is a substantial risk that*

11

> *confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.* For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. *In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.* A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt. (emphasis added); *see also* ABA Model Rule of Prof'l Conduct 1.9, Cmt. (identical). Consistent with this Comment, the Tenth Circuit "look[s] to whether the factual contexts of the two representations are similar or related." *Stiger*, 413 F.3d at 1196 (quotations omitted); *Cole*, 43 F.3d at 1384 (same); *SLC Ltd. V*, 999 F.2d at 466 (same). According to the Tenth Circuit, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Stiger*, 413 F.3d at 1384.

The Court concludes that the 2005 Lawsuit and this case are "substantially related" and that there is a "substantial risk" that confidential factual information obtained by Crowe & Dunlevy in the 2005 Lawsuit would materially advance Manpower's position in the present case. First, there

is significant overlap in the legal claims asserted against AcctKnowledge and Manpower. Both cases involve allegations that a competitor of API "tempnapped" API employees from one of its clients, IBM. In serving as counsel for the 2005 Lawsuit for over a one-year period of time, there is a substantial likelihood that Crowe & Dunlevy learned, and even created, trial strategies in asserting a claim against a competitor for tempnapping employees assigned by API to IBM. Just like AcctKnowledge, Manpower is a competitor that API has accused of tortiously interfering with prospective business advantages to be gained by API from its employees. This is simply the same claim against a different defendant. Crowe & Dunlevy's contention that it has gained no tactical or material advantage in formerly representing API in prosecuting an identical claim against a different competitor is without merit.

Second, and contrary to Manpower's arguments, there is a significant factual overlap between the two matters. Manpower argues that "[n]one of the facts or circumstances surrounding the [2005 Lawsuit] will bear upon this matter, and many of those facts have been rendered obsolete by the passage of time." (Resp. to Mot. to Disqualify 6.) However, the Court finds many facts and circumstances that are relevant to both actions, including but not limited to: (1) API's internal procedures and competitive strategies aimed at retaining employees assigned to IBM and generally preventing tempnapping of its employees by its competitors; (2) API's internal response and strategy when tempnapping by a competitor occurs; (3) API's internal information regarding its client relationship with IBM and the Base Agreement that is at issue in the present case; (4) API's resolution of the Ombudsmen Proceeding, which was intertwined with the 2005 Lawsuit, and any compromises reached by API with IBM as a result of such proceeding; and (5) API's ongoing strategies for maintaining its client relationship with IBM. There is a significant factual nexus

13

between the two lawsuits that creates a substantial risk that Crowe & Dunlevy possesses confidential information that could further the interests of Manpower in this case. *See SLC Limited V*, 999 F.2d at 467 (finding that attorney's knowledge of former client's financial position, negotiating strategies, and its capacity to settle its outstanding indebtedness created conflict in representing secured creditor in bankruptcy proceeding, where the former client was a general partner of the bankruptcy debtor). Further, the 2005 Lawsuit was dismissed in January 2006, and this action was filed in late 2007. This is not such a significant passage of time that facts and information learned by Crowe & Dunlevy would now be rendered obsolete. Indeed, it is the same Base Agreement with IBM that API sought to protect in both cases.

Third, the Court rejects Manpower's argument that, because API now seeks injunctive relief and because API has now included IBM as a defendant, the two cases are not substantially related. (*See* Resp. to Mot. to Disqualify 7-8.) By attempting to characterize the breach of contract claim against IBM as the "principal" claim asserted in this case, Manpower ignores that the fourth cause of action against it is identical to a cause of action asserted against AcctKnowledge in the 2005 Lawsuit. The claim against Manpower is not merely a throw-away claim in a larger, unrelated case that is really against IBM. The allegations are that Manpower, after striking a deal with IBM, placed representatives outside IBM and solicited API employees to leave API in order to maintain their IBM jobs. (*See* 11/1/07 Verified Petition, Ex. E to Mot. to Disqualify, at ¶ 15.) Clearly, API has accused Manpower of wrongdoing that is distinct from IBM's alleged breach of the Base Agreement. Further, although IBM was not a party to the 2005 Lawsuit, the Base Agreement was relevant and material to the question of whether AcctKnowledge tortiously interfered with such agreement. There is a high likelihood that API learned numerous facts regarding API's negotiation,

14

performance, and interpretation of the Base Agreement that could materially advance Manpower's position that it did not tortiously interfere with the Base Agreement.  In addition, although API did not sue IBM in the 2005 Lawsuit, API was, during the same time frame, involved in a dispute with IBM regarding its conduct in relation to API employees and AcctKnowledge.  That dispute proceeded along a parallel track with the 2005 Lawsuit and, according to API, was instrumental in its decision to settle and dismiss the 2005 Lawsuit.

Fourth, Manpower's argument that there is no substantial risk that confidential information was learned because there was no discovery taken and there was a "minimal amount of activity" in the 2005 Lawsuit is unpersuasive.  The amount of discovery or the number of entries on the state court docket sheet are irrelevant to the question of whether confidential information was potentially derived from one's client during the course of a year-long attorney/client relationship.  Further, the fact that the Base Agreement is public record in no way minimizes the risk that Crowe & Dunlevy has confidential information regarding the Base Agreement.

Fifth, the Court does not share Manpower's concerns that the Court's disqualification of Crowe & Dunlevy will have far-reaching, negative effects on its practice or the modern legal practice in general.  (*See* Resp. to Mot. to Disqualify 7 ("The approach advocated by Plaintiff would essentially require disqualification whenever a law firm represented a new client in a matter adverse to a former client and the two matters involved similar legal theories because the law firm *might have* obtained confidential information about the former client's views with respect to those legal theories.  In effect, Plaintiff is seeking to prevent [Crowe & Dunlevy] from ever representing an adverse party where the claims and legal theories resemble those in the 2005 Lawsuit.").  In this case, there is not merely an overlap of generalized legal theories or "general knowledge of the

15

client's policies and practices." Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt.  Instead, there is evidence of a likelihood of "knowledge of specific facts gained in a prior representation that are relevant to the matter in question." *Id.*  This is because the 2005 Lawsuit involved the same underlying client agreement and client relationship with IBM.  It also involved the same underlying allegations, which were that IBM and a competitor worked together to terminate API as a staffing provider.

Such facts make the case distinguishable from *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863 (S.D. Ohio 2002), the principal case relied upon by Manpower.  In that case, the moving party sought to disqualify opposing counsel in a breach of contract action based on counsel's representation of the moving party in former, unrelated breach of contract actions.  *Id.* at 868.  The court characterized the information obtained during the former representation as "background information" and mere "familiarity of the workings of the corporation." *Id.* at 869. The court explained that the "simple fact that a law firm has represented a client in *garden-variety contract disputes*, does not mean that when the client chooses representation by another firm, the client has veto power to block its former firm from representing an adverse party in yet another garden-variety contract dispute." *Id.* at 868 (emphasis added).  In this case, API has not merely shown that Crowe & Dunlevy represented it in a garden-variety breach of contract case.  API has shown that Crowe & Dunlevy represented it in a former case presenting highly similar facts and legal issues and involving the same contract with IBM.  Crowe & Dunlevy is free to accept representation against API in other matters; however, these two cases are so related in time and subject matter that a conflict of interest exists.

16

For reasons explained above, API has shown that the two matters are substantially related. The Court finds that there is a "substantial risk" that Crowe & Dunlevy gained confidential information based on its former attorney/client relationship with API that would give Manpower a material advantage in this case, such that ORPC 1.9(a) is violated by Crowe & Dunlevy's representation of Manpower. Further, the Court concludes that disqualification is warranted in light of the public interest and the litigants' rights. Specifically, Manpower's right to select counsel is outweighed by (1) API's right to protect its confidential information and legal strategies regarding retention of its employees that work at IBM, and (2) the public's interest in trials that are untainted by unfair advantage.

Plaintiff's Motion to Disqualify Counsel (Doc. 20) is GRANTED. Manpower shall cause an entry of appearance to be entered by new counsel no later than Friday, June 6, 2008. All parties shall submit a revised Joint Status Report no later than Wednesday, June 18, 2008. A Scheduling Order will be entered following submission of the Joint Status Report.

**ORDERED THIS 23rd DAY OF MAY, 2008.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**